

U.S. Department of Justice

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

*Main Reception: (617) 748-3100*

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

February 17, 2008

Patrick J. Brackley, Esq.
233 Broadway
Suite 801
New York, NY 10279

     Re:    Humza Zaman

Dear Mr. Brackley:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Humza Zaman ("Defendant"), in the above-captioned case. The Agreement is as follows:

    1.    <u>Change of Plea</u>

At the earliest practicable date, Defendant shall waive indictment, waive any challenge he may have to venue, and plead guilty to the attached information charging him with conspiracy in violation of 18 U.S.C. §371. Defendant expressly and unequivocally admits that he committed the crime charged in the information; did so knowingly and wilfully; and is in fact guilty of the charged offense.

For violation of 18 U.S.C. §371, Defendant faces a maximum penalty of imprisonment for five years, three years' supervised release, restitution and a $250,000 fine;

    2.    <u>Sentencing Guidelines</u>

The sentence to be imposed upon Defendant is within the discretion of the sentencing court, subject to the statutory mandatory maximum penalties set forth above, and the provisions of the Sentencing Reform Act, and the United States Sentencing Guidelines promulgated thereunder. The Sentencing Guidelines are advisory, not mandatory and, as a result, the Court may impose a sentence up to and including the statutory maximum term of imprisonment and statutory maximum fine. In imposing the sentence, the Court must consult and take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties do not have any agreement with respect to the application of the U.S. Sentencing Guidelines. The U.S. Attorney reserves the right to oppose any argument(s) by Defendant for a departure or a sentence outside the Guidelines under the factors set forth in 18 U.S.C. §3553(a).

Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under USSG §3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under USSG §3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit his conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG §1B1.3;

(d) Fails to provide truthful information about his financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG §1B1.3;

(f) Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG §3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; and/or

(j) Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance of responsibility adjustment, the U.S. Attorney may seek an upward adjustment pursuant to USSG

§3C1.1 if Defendant obstructs justice after date of this Agreement.

3. <u>Sentence Recommendation</u>

The parties do not have any agreement as to the sentences they will recommend at the time of sentencing.

Defendant agrees that he will provide to the U.S. Attorney expert reports, motions, memoranda of law and documentation of any kind on which he intends to rely at sentencing not later than fourteen days before sentencing. Any basis for sentencing with respect to which all expert reports, motions, memoranda of law and documentation have not been provided to the U.S. Attorney at least fourteen days before sentencing shall be deemed waived.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

4. <u>Payment of Mandatory Special Assessment</u>

Defendant agrees to pay the mandatory special assessment of $100 to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

5. <u>Protection of Assets for Payment of Restitution and Fine</u>

Defendant agrees not to transfer, or authorize the transfer of any other asset in which he has an interest without prior express written consent of the U.S. Attorney, except for:

(1) Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $5000;

(2) Ordinary living expenses necessary to house, clothe, transport and feed Defendant and those to whom he owes a legal duty of support, so long as such assets do not exceed $3500 per month; and

(3) Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Agreement and continue until the fine and/or restitution ordered by the Court at sentencing is satisfied in full.

6. <u>Waiver of Rights to Appeal and to Bring Collateral Challenge</u>

a. Defendant has conferred with his attorney and understands that he has the right to challenge both his conviction and his sentence on direct appeal. Defendant also understands that he may, in some circumstances, be able to argue that his conviction and/or sentence should be set aside or reduced in a collateral challenge, such as pursuant to a motion under 28 U.S.C. §2255 or 18 U.S.C. §3582(c).

b. Except as specifically reserved below, the defendant waives any right he has to challenge his conviction or sentence within the statutorily authorized range on direct appeal or in collateral challenge.

c. Defendant specifically reserves the right to appeal any legally incorrect guidelines calculation upon which the sentence is based.

d. This Agreement does not affect the rights of the United States as set forth in 18 U.S.C. §3742(b). Defendant expressly acknowledges that he understands the U.S. Attorney has retained his appeal rights.

7. <u>Other Post-sentence Events</u>

a. In the event that, notwithstanding the waiver provision of paragraph 6, Defendant appeals or collaterally challenges his sentence, the U.S. Attorney reserves the right to argue the correctness of the sentence imposed by the district court (in addition to arguing that any appeal or collateral challenge is waived as a result of the waiver in paragraph 6).

b. If notwithstanding the waiver provision of paragraph 6, the defendant seeks re-sentencing, he agrees that he will not seek to be re-sentenced with the benefit of any change to the criminal history category that the Court calculated at the time of the defendant's original sentencing. Thus, for example, the defendant will not seek to be re-sentenced based on the set aside of a prior state-court conviction that occurs after sentencing.

c. In the event of a re-sentencing following an appeal from or collateral challenge to Defendant's sentence, the U.S. Attorney reserves the right to seek a departure from the Sentencing Guidelines and a sentence outside the Sentencing Guidelines if, and to the extent, necessary to reinstate the sentence advocated by the U.S. Attorney at Defendant's initial sentencing pursuant to this agreement.

8. <u>Court Not Bound by Agreement</u>

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge.

Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

9.  Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph 1 of this Agreement.

10.  Rejection of Plea by Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

11.  Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands and agrees that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, computer files, materials, documents, computers or other objects which may be provided by him to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

12. <u>Who Is Bound By Agreement</u>

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

13. <u>Complete Agreement</u>

This letter contains the complete agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Stephen P. Heymann.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
DIANE C. FRENIERE, Chief
White Collar Crime Section

ACKNOWLEDGMENT OF PLEA AGREEMENT

    I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

                                      Humza Zaman
                                      Defendant

                                      Date: 2-26-9

    I certify that Humza Zaman has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

                                      Patrick Brackley
                                      Attorney for Defendant

                                      Date: 2/26/2009

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. |
| | ) | |
| | ) | VIOLATION: |
| v. | ) | 18 U.S.C. § 371 (Conspiracy) |
| | ) | |
| HUMZA ZAMAN | ) | |
| | ) | |
| Defendant. | ) | |

**INFORMATION**

COUNT ONE
(Conspiracy)
18 U.S.C. § 371

The U.S. Attorney charges that:

1. From approximately 2003 through 2008, in the Southern District of Florida, the Southern District of New York, the District of Massachusetts and elsewhere,

HUMZA ZAMAN,

and others known and unknown to the U.S. Attorney, did willfully conspire to commit the following offenses against the United States:

    a.    Unlawful Access to Computers (18 U.S.C. § 1030(a)(2)(C)) – by means of interstate communications, intentionally accessing without authorization computers, which were used in interstate commerce, and thereby obtaining information from those computers, including credit and debit card information, for the purposes of commercial advantage and private financial gain;

1

b. Access Device Fraud (18 U.S.C. § 1029(a)(3)) – knowingly and with intent to defraud, possessing at least fifteen unauthorized access devices, to wit: stolen credit and debit card numbers;

c. Wire Fraud (18 U.S.C. § 1343) – having devised and executed a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitting and causing to be transmitted, in interstate commerce, wire communications, including writings, signals and sounds, for the purpose of executing the scheme to defraud;

d. Aggravated Identity Theft (18 U.S.C. § 1028A) – knowingly transferring, possessing and using without lawful authority, a means of identification of other persons – to wit: credit and debit card account numbers of individuals – during and in relation to the commission of wire fraud (in violation of 18 U.S.C. §1343);

e. Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i) and (a)(2)(B)(i)) – knowing that the financial transactions, transmittals and transfers were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, (i) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of said

specified unlawful activity, and (ii) knowingly transmitting and transferring funds from a place inside the United States to and through a place outside the United States and to a place inside the United States from and through a place outside of the United States.

<u>Manner and Means of the Conspiracy</u>

2.  ZAMAN and his co-conspirators, known and unknown to the U. S. Attorney, employed the following manner and means and others in furtherance of the conspiracy:

   a.  The conspirators unlawfully gained electronic access to corporate computer networks using various techniques;

   b.  The conspirators downloaded from those computer networks customers' credit and debit card information;

   c.  The conspirators fraudulently used the credit and debit card information to obtain cash advances and sold the information to others for fraudulent use by them;

   d.  The conspirators moved money through Internet currency exchanges and bank accounts in Latvia to conceal and disguise the nature, location, source, ownership and control of the proceeds of this activity; and

   e.  The conspirators repatriated proceeds through intermediaries in San Francisco, New York and elsewhere, and transported, transmitted and transferred those proceeds, by hand and by mail service, to New York and Miami to disguise the nature, location, source, ownership and control of the proceeds before their distribution and use.

Overt Acts

3. In furtherance of the conspiracy and to effect its objects, ZAMAN and his co-conspirators committed the following overt acts, among others:

    a. Between on or about November 21, 2005, and on or about November 25, 2005, ZAMAN used ATM cards linked to accounts in the names of fictitious and unrelated individuals to repatriate approximately $38,000 funds from Latvian bank accounts specified by Albert Gonzalez, and sent the proceeds, minus a ten percent commission (which he kept) to Gonzalez in Miami.

    b. In or about the second half of February, 2006, ZAMAN flew from New York to San Francisco at Gonzalez's direction; picked up approximately $300,000 in repatriated proceeds; and packaged and shipped the proceeds to Gonzalez in Miami.

    c. In or about the first half of March, 2008, ZAMAN transmitted to Gonzalez ATM system logs of the international bank at which he was then employed as a programmer to see whether and of what value they could be to the conspirators.

MICHAEL J. SULLIVAN
United States Attorney

By: _____
STEPHEN P. HEYMANN
Assistant U.S. Attorney

DATE: February ____, 2009